IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

EFRAND ESAU CANTORAL, #1113625          §

VS.                                                                §                    CIVIL ACTION NO. 6:05cv87

CHARYL KYLE, ET AL.                            §

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Efrand Esau Cantoral, an inmate previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983.  The case was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on March 16, 2005.  The Plaintiff indicated that he is HIV+ and has AIDS, Hepatitis B and C, and Herpes.  He complained about the medical care he received while confined at the Michael Unit.  After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims.  The hearing was conducted on June 23, 2005.  Regional Grievance Supervisor Chip Satterwhite and Nurse Thomas Maciel attended the hearing to answer any questions the Court may have concerning the Plaintiff's security or medical records.  Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the plaintiff.  *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

1

The Plaintiff testified that the normal protocol for providing antiretroviral treatment for AIDS is when a person's T-cell, also known as CD4+, count drops to 350.  He stated that his T-cell count was 293 in February, 2005, but the medical providers in the prison system have not treated him for the disease.  He noted that blood tests are given every six months, but he believes it should be given every three or four months.  He missed a scheduled blood test when he was confined at the Skyview psychiatric facility, but he was not given the blood test upon his return to the Michael Unit.  He was told that he would be rescheduled for June, 2005, but he has not been tested yet.  It is noted that the Court received a change of address from him on May 11, 2005, wherein he stated that he had been transferred to the Darrington Unit.  The Plaintiff added that he has filed grievances about not receiving treatment for AIDS, but security officials responded to his grievances by saying this is a medical matter and that he should write to the Medical Department for help.

Nurse Thomas Maciel testified under oath from the Plaintiff's medical records.  He noted that the Plaintiff was seen by Dr. Paar, an AIDS doctor, by Telemed on January 12, 2005.  Dr. Paar ordered blood tests and Ibuprofen and recommended a transfer to the Stiles Unit.

The Plaintiff also complained about allergy problems.  Medical personnel have prescribed Pseudoephedrine, but he still has problems.  He also noted that he was not given his medications on a routine basis.  The Court will note that he was clearly hoarse during the hearing, which the Plaintiff attributed to allergy problems.  Nurse Maciel testified about the number of times he was seen for allergy problems from October, 2004 through January, 2005.  It was noted on several occasions that he was hoarse.  Medications, including Pseudoephedrine and cough syrup, were prescribed.

The Plaintiff was asked why he is suing the various Defendants.  His primary complaint is against Nurse Charlotte Bussey.  The Plaintiff testified that he was confined in administrative

2

segregation, and he had to rely on Nurse Bussey for medical care.  He complained that she routinely denied or delayed his medication, such as Ibuprofen or Pseudoephedrine.  She made notations that he had refused treatment or medication.  He complained that she ignored protocols on receiving treatment for AIDS, but the Court asked whether he expected her to ignore protocols if his T-cell count was above 350.  He complained that neither Medical Administrator Charyl Kyle nor Nurse Carol Warren, the supervisory nurse at the Michael Unit, took any steps to correct the problem.

The Plaintiff gave the Court his permission to review his medical records.  The records reveal that the Plaintiff was examined by Dr. Paar on January 12, 2005.  He noted that the Plaintiff was currently on Selenium Sulfide, Ibuprofen, Lubriderm, Penicillin and Peridex.  The Plaintiff's T-cell count on February 19, 2004 was 443 and on September 15, 2004 was 367.  The Plaintiff told him that he had never been on antiretroviral therapy and that he had lost twelve pounds.  Dr. Paar issued orders for a complete blood work, extension of the Ibuprofen prescription and a request for a transfer to the Stiles Unit.  On January 18, 2005, Dr. Paar also order Sudafed for the Plaintiff.

On February 3, 2005, the Plaintiff was examined by the Mental Health Services Department at the Skyview psychiatric facility after a suicide attempt.  He had cuts on his forearms, which were described as superficial.  The record included the following entry: "Took me off my Haldol, Now I'm hearing and seeing things not there.  Decreased judgment - I spat on an officer the voices tell me to do things - tell me to hang myself.  Denied suicidal/homicidal ideations."  He was discharged from the Skyview Unit on February 8, 2005.  It was noted that his Haldol medicine was discontinued because he was selling it.  It was concluded that he was not psychotic, depressed or distressed.

The Plaintiff's medications were reconfirmed when he returned to the Michael Unit.  The medications were Selenium Sulfide, Lubriderm, Haloperidol (Haldol) and Diphenhydramine

(Benadryl).  On February 18, 2005, the Plaintiff made several complaints to Nurse Bussey, who referred him to a medical provider.  On March 1, 2005, the Plaintiff demanded Motrin from Nurse Bussey.  He argued with her and would not listen to her.  Her analysis was malingering and arguing with staff.  On March 14, 2005, Nurse Bussey referred him to a medical provider for complaints about discharge associated with Herpes.  Nurse Practitioner Fleming saw him on March 25, 2005.  The Plaintiff complained that his T-cell count was dropping.  She noted that he refused an appointment to John Sealy Hospital on February 25, 2005, and she issued instructions to again submit the request to transfer the Plaintiff to the Stiles Unit for declining HIV status.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976);  *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).  In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence.  The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . .  the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference.  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

In the present case, the medical records specify that the Plaintiff tested HIV+ for the first time on August 20, 2002. Clearly HIV+/AIDS is a serious medical need. The Plaintiff noted that treatment should begin when his T-cell count drops below 350. The blood test administered on February 19, 2004 was 443 and on September 15, 2004 was 367. Dr. Paar issued a plan to deal with the Plaintiff's condition, which included a thorough blood work. The Plaintiff, however, missed the blood test because he was confined at the Skyview psychiatric facility after he attempted to commit suicide. The Court can appreciate that the Plaintiff may have increased stress levels under the circumstances, but he must also cooperate with Dr. Paar and medical personnel in order to receive the tests and treatment ordered by Dr. Paar. Nonetheless, Dr. Paar has devised a plan, which includes testing, to trigger therapy when the protocol is reached. Medical personnel have been responsive to the Plaintiff's need for medical care for AIDS. The Plaintiff may feel that the treatment provided is inadequate; however, allegations regarding the inadequacy of medical treatment does not amount to a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238. The facts do not support an inference of deliberate indifference concerning the Plaintiff's HIV+/AIDs condition.

The Plaintiff also complained about care for his allergies and other non-life threatening medical problems.  It is again noted that he will have a basis for a potentially meritorious civil rights lawsuit only if medical personnel are deliberately indifferent to his serious medical needs.  His problems with allergies may be annoying, but allergies are not the type of medical problem that trigger the protection of the Constitution.  Nonetheless, medical personnel were responsive to these problems.  Medication was provided.  The Fifth Circuit's conclusions in *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992), albeit concerning back pain, are equally applicable in the present case:

> The record shows that he received continuous treatment for his back injury despite his incarceration.  The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall short of establishing deliberate indifference by the prison authorities.  Continuing back pain is unpleasant.  Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred.

The Plaintiff routinely received medical care for his various ailments.  He was not ignored at the Michael Unit.  The facts as alleged and developed do not support a claim of deliberate indiffernce.

In conclusion, the Court is of the opinion that the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.  The case should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  It is accordingly

**ORDERED** that the cause of action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  All motions by either party not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **30** day of **June, 2005.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

6